# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

PATRICIA MOODY                                                                          PLAINTIFF

V.                                                              CIVIL ACTION NO. 4:08-cv-48-DPJ-FKB

EAST MISSISSIPPI STATE HOSPITAL                                                         DEFENDANT

## ORDER

This employment discrimination case is before the Court on Defendant East Mississippi State Hospital's Motion for Summary Judgment [24]. Having considered the parties' submissions and the applicable authority, the Court finds the motion should be granted.

**I.    Facts & Procedural History**

Plaintiff Patricia Moody began her employment with Defendant East Mississippi State Hospital (EMSH) in December 1998 and became a security officer at EMSH in 2001 or 2002. In September 2007, Plaintiff asked for a schedule change so that she could work the third shift. On September 22, 2007, Plaintiff alleges she found a picture of "Ronald McDonald hanging from a tree with a noose around its neck." Am. Compl. [17] ¶ 6. Plaintiff discovered the picture under a sign-in book and believes that it was left for her "so that [she] would be frightened out of working . . . on third shift." *Id.* Plaintiff and her immediate supervisor took the picture to EMSH Chief of Public Safety Carlos Colucci. Colucci promptly investigated, discovered that co-worker Johnny Knight printed the picture, and verbally counseled Knight and his supervisor Jerry Ivey against bringing potentially offensive materials to work. Knight apologized to Plaintiff.

Plaintiff was dissatisfied with Defendant's response and filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on January 14, 2008. In the

Charge, she described these events and a conversation she overheard in which "Knight told Jerry Ivey in front of [her] that there was a person standing by the graveyard with a clown mask on." Ex. 1 to Compl. [1]. The EEOC quickly issued a right to sue letter on February 22, 2008. *Id.* Plaintiff resigned in April 2009. Moody Dep. at 16.

Plaintiff, acting pro se, filed suit in this Court on May 22, 2008, and amended her complaint on May 29, 2009, after obtaining representation. The amended complaint invokes causes of action based on Title VII of the Civil Rights Act of 1964, the Thirteenth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1981, "due process" generally, and Mississippi tort law. In addition to the Ronald McDonald lynching photograph incident, the Amended Complaint references numerous other acts by those at EMSH during 2007 and 2008. The Court exercises subject matter jurisdiction over any federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

## II.     Standard

Summary judgment is warranted under Rule 56(c)(2) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes

demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

In this case, Plaintiff failed to address many of Defendant's dispositive legal arguments. However, the mere lack of response does not relieve the Court of its obligation to consider whether Defendant's arguments are meritorious. *See John v. Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985). Moreover, Plaintiff made numerous speculative statements or conclusory arguments which are of no moment. Finally, the Court considered the entire record, however, to the extent something was overlooked, there is "no duty 'to sift through the record in search of evidence to support a party's opposition to summary judgment.'" *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir. 2008) (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992)).

**III.    Analysis**

    A.    Federal Claims

Defendant argues that Plaintiff's Title VII claims must be limited by the scope of EEOC exhaustion; that Plaintiff failed to create a genuine issue of material fact as to her discrimination claim based on a hostile work environment theory; that there is no independent cause of action for violation of § 1981 by a state actor; that EMSH has Eleventh Amendment immunity from Plaintiff's § 1983 claim; and that punitive damages are unavailable against EMSH in federal civil rights actions.

        1.    Title VII

Before addressing Defendant's exhaustion argument, it is necessary to determine what type of Title VII claim Plaintiff presents. The Amended Complaint generically cites Title VII without reference to any of the more particular sections and without stating which type of Title VII claim she pursues. Given the allegations, Defendant guessed that Plaintiff intended a hostile work environment claim. Plaintiff seems to accept this description of her claim in her Response and urges the Court to look to the "totality of the circumstances," the test applicable to a hostile work environment claim. Pl.'s Resp. at 5. She makes no argument for any other type of claim under Title VII, and the Court will therefore focus on the issue as framed by the parties.

            a.    *Exhaustion*

There is no dispute that Plaintiff exhausted discrimination claims based on the Ronald McDonald lynching photograph incident and the Knight conversation described in her EEOC Charge (hereinafter the "Charged Conduct"). Defendant argues that evidence of any conduct beyond the Charged Conduct must be excluded as unexhausted. Plaintiff's only response is that

"Defendant desires that all the allegations more elaborated in her Answer to Interrogatory 6 should be limited in import by the language and time period stated in her EEOC Charge, but these elaborations are likewise incorporated as a basis for all her Claims for Relief." Pl.'s Resp. at 5. Plaintiff does not further explain her position.

"Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 921 (5th Cir. 2009) (quoting *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008)). "Filing an administrative charge with the EEOC satisfies this requirement." *Id.* However, the extent of exhaustion is limited by the scope of the EEOC charge and resulting investigation. A Title VII complaint "'may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation *during the pendency of the case before the Commission*.'" *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 711 (5th Cir. 1994) (emphasis added) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). The Fifth Circuit has explained:

> The scope of the exhaustion requirement has been defined in light of two competing Title VII policies that it furthers. On the one hand, because "the provisions of Title VII were not designed for the sophisticated," and because most complaints are initiated pro se, the scope of an EEOC complaint should be construed liberally. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970). On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt to achieve non-judicial resolution of employment discrimination claims. *Id.* at 466. Indeed, "[a] *less* exacting rule would also circumvent the statutory scheme, since Title VII clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." [*Id.*] at 467. With that balance in mind, this court interprets what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." [*Id.*] at 466. We engage in fact-intensive analysis of the

> statement given by the plaintiff in the administrative charge, and look slightly
> beyond its four corners, to its substance rather than its label.

*Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006) (some citations omitted).

The only pre-Charge conduct apparent in the Amended Complaint is the averment that Plaintiff was wrongfully denied promotion in November 2007. The narrowly circumscribed contents of the January 2008 Charge could not reasonably be expected to give rise to an investigation into an alleged failure to promote or other pre-Charge conduct imbedded in the record. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (holding "[d]iscrete acts such as termination [and] failure to promote" are not continuing violations but must be independently exhausted).

Likewise, those events allegedly occurring after the EEOC concluded its brief investigation in February 2008 (including denial of a raise, subjection to mental and psychological evaluations and drug tests, reprimands, and constructive discharge) would not reasonably be expected to grow out of this Charge or investigation. The Charged Conduct was related to the acts of third shift employee Johnny Knight (and to a lesser extent Jerry Ivey). The EEOC investigation lasted approximately one month, none of the other conduct was in any way similar to the Charged Conduct, and according to Plaintiff's deposition testimony, neither Knight nor Ivey was responsible for the other incidents. Def.'s Mot. [24] Ex. 1(Moody Dep.) at 49. Plaintiff has not exhausted these other claims. *See Hill v. Dep't of Veterans Affairs*, No. 08-60532, 2009 WL 348767, at *4 (5th Cir. Feb. 12, 2009) (citing *Gates v. Lyondell Petrochem. Co.*, 227 F. App'x 409, 409 (5th Cir. 2007)); *O'Neal v. Roadway Express*, 181 F. App'x 417, 419-20 (5th Cir. 2006) (finding post-charge incidents unexhausted where there was no evidence

6

that the EEOC "was constructively or actually aware of the later incidents"); *see also Morgan*, 536 U.S. at 114; *Eberle v. Gonzales*, 240 F. App'x 622, 628 (5th Cir. 2007).

b. *Exhausted Discrimination Claim*

Having identified the relevant conduct, the Court now considers whether Plaintiff can make out a prima facie case of race based hostile work environment.[1] Plaintiff must show "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

To affect a term or condition of employment, the defendant's conduct must be "'sufficiently severe or pervasive.'" *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir.

---

[1]Plaintiff claims that she may skip the prima facie case because the photograph constitutes direct evidence. "Direct evidence is evidence which, if believed, proves the fact without inference or presumption." *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citation omitted). In the Fifth Circuit, "to qualify as direct evidence of discrimination, an employer's comment 'must be direct and unambiguous.'" *Read v. BT Alex Brown Inc.*, 72 F. App'x 112, 119 (5th Cir. 2003) (citation omitted). Direct evidence of discrimination includes "statements or documents which show on its face that an improper criterion served as a basis . . . for the adverse employment action." *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003) *rev'd on other grounds* (citation omitted). Finally, "'remarks may serve as sufficient evidence of . . . discrimination if the offered comments are: 1) [race] related; 2) proximate in time to the [employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 608 (5th Cir. 2007) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)). In this case, Plaintiff merely states that the picture constitutes direct evidence. She has not directed the Court to any record evidence capable of fully establishing that the photograph satisfies the requirements of direct evidence. Such conclusory and legalistic arguments are not sufficient. *See TIG Ins. Co.*, 276 F.3d at 759.

2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "The 'mere utterance of an . . . epithet which engenders offensive feelings' is not enough, nor are 'isolated incidents (unless extremely serious).'" *Johnson*, 334 F. App'x at 670-71 (quoting *Harris*, 510 U.S. at 21; *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Finally, "[w]hether an environment is 'hostile' or 'abusive' is determined by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Shepherd v. Comptroller of Pub. Accounts of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) (citing *Harris*, 510 U.S. at 23). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive." *Id.* (citing *Harris*, 510 U.S. at 21-22).

Looking at the Charged conduct, the Court concludes that the Knight conversation is simply not discriminatory. Plaintiff, by her own account, overheard Knight tell someone else that he saw someone in a graveyard wearing a mask. Pl.'s Resp. [31-4] at 7.[2] The photograph is different. Assuming arguendo that Knight placed the Ronald McDonald photograph under the book in hopes that Plaintiff would find it, that he did so because of her race, and that this single incident was sufficiently severe to create a racially hostile work environment, all of which Defendant disputes, Plaintiff still fails to satisfy the fifth element of her prima facie case—that Defendant knew of the conduct but took no remedial action.

---

[2]Though probably hearsay, Plaintiff attached Defendant's explanation as an exhibit, stating that Knight was merely telling another co-worker what he had seen around Halloween. Pl.'s Resp. [31-2] at 9.

In *Harvill v. Westward Communications, L.L.C.*, the Fifth Circuit summarized the analysis for determining whether remedial measures are adequate, noting:

> We have observed that determining whether an employer's response to discriminatory conduct is sufficient will necessarily depend on the particular facts of the case, such as the remedial steps taken and the severity of the harassment. When a company, once informed of allegations of . . . harassment, takes prompt remedial action to protect the claimant, the company may avoid Title VII liability. Prompt remedial action must be reasonably calculated to end the harassment, therefore, [an employer] may be held liable despite having taken remedial steps if [the employee] can establish that [the employer's] response was not reasonably calculated to halt the harassment.

433 F.3d 428, 437 (5th Cir. 2005) (internal citations and quotations omitted).

There is no dispute in the record that after Plaintiff took her complaint to Colucci, he immediately began an investigation. Moody Aff. (Ex. 1 to Pl.'s Resp. [29]) ¶ 4; Colucci Aff. (Ex. 2 to Def.'s Mot. [24]) ¶ 5 (stating that he began interviews the day after Plaintiff reported the incident). Colucci quickly determined that Knight brought the picture, and after discussing options with human resources, Colucci determined that "verbal counseling with all parties was sufficient." Colucci Aff. (Ex. 2 to Def.'s Mot. [24]) ¶ 5. Five days after Plaintiff complained, Colucci met with Plaintiff, Knight, and Knight's supervisor Ivey. *Id.* ¶ 6; *see also* Moody Dep. (Ex. 1 to Def.'s Mot. [24]) at 33-35. Knight explained that he printed the picture because a Ronald McDonald was stolen from a local restaurant, and he thought it was funny that a Ronald McDonald was stolen in another state. Plaintiff explained that there was nothing funny about an image of a lynching, and Knight apologized. *Id.* Colucci verbally counseled Knight and Ivey, telling them not to bring offensive materials to work. *Id.*

Plaintiff has offered no evidence to suggest that the remedial measures were ineffective. In fact, her future complaints related to employees on a different shift. Def.'s Mot. [24] Ex. 1

9

(Moody Dep.) at 49. Instead, she complains that Defendant should have done more, including the termination of Knight and Ivey's employment. The Court finds Defendant's conduct constituted prompt remedial action as a matter of law. The action taken was "reasonably calculated to end the harassment" and did end the harassment. *Harvill*, 433 F.3d at 437; *see also Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 616 (5th Cir. 1999) (finding prompt remedial action where defendant instructed employee "to leave [plaintiff] alone" and the offensive conduct ceased); *Waymire v. Harris Cnty., Tex.*, 86 F.3d 424, 429 (5th Cir. 1996) (holding reprimand three months after incident was prompt remedial action as a matter of law).[3]

    2.    Section 1981

Plaintiff's Amended Complaint pursues various constitutional claims and claims under 42 U.S.C. § 1981. In their memoranda, the parties dispute whether she can bring such claims without first invoking 42 U.S.C. § 1983. However, Defendant alternatively raises a threshold jurisdictional issue claiming that it is an arm of the state and therefore immune from suit in federal court whether the claims are couched under § 1981 or § 1983. Defendant is correct.

Under the Eleventh Amendment, an arm of the state is immune from suit by private litigants in federal court unless immunity has been waived. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (citations omitted). Plaintiff's Response [36] does not contest

---

[3]Plaintiff's response includes the following statement: "Defendant ratified that intent [to harass] and later allowed a course of discipline and unfair treatment that further that [sic] supports a conclusion of ratification." Pl.'s Resp. [29] at 6. To the extent this statement is intended to address the fifth element of the prima facie case, Plaintiff offers no elaboration. "Ratification occurs only when the employer confirms, adopts, or fails to repudiate the acts of its employees." *Briones v. Caleb Brett USA, Inc*., 69 F.3d 535, 1995 WL 625328, at *4 n.5 (5th Cir. 1995) (unpublished table decision). Plaintiff must offer more than conclusory statements and legalistic arguments. *TIG Ins. Co.*, 276 F.3d at 759.

Defendant's status as an arm of the state and does not directly address Eleventh Amendment Immunity. Instead, she simply argues that the Court should hear the constitutional claims no matter how they are framed in the Amended Complaint because they have merit. Pl.'s Resp. [36] at 4. Plaintiff's authority for this argument is not applicable.

Plaintiff generally cites several cases where claims were allowed against employers under § 1981 or Title VII. However, none of those cases consider Eleventh Amendment immunity and most involved private employers who are not immune. Defendant is not a private employer. It is an arm of the state that has asserted its Eleventh Amendment immunity. And, unlike Title VII, Eleventh Amendment immunity has not been waived as to either § 1983 or § 1981. *See Will*, 491 U.S. at 66 (noting that in passing § 1983, Congress "had no intention to disturb the states' Eleventh Amendment immunity"); *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069 (5th Cir. 1981) ("Section 1981 contains no congressional waiver of the state's eleventh amendment immunity."). Plaintiff has conceded that Defendant is an arm of the state and has not addressed waiver in any fashion. Accordingly, Defendant is entitled to immunity from federal claims brought in federal court, except for the Title VII claim addressed above. The other federal claims are dismissed without prejudice for lack of jurisdiction.[4]

---

[4] Although the Court did not reach whether Plaintiff could bring her § 1981 claims without asserting § 1983, it would alternatively hold that she may not. *See Washington v. City of Gulfport, Miss.*, 351 F. App'x 916, 919 (5th Cir. 2009) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989) ("The express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units")).

3. <u>Punitive Damages</u>

Defendant asserts immunity from punitive damages on all federal claims based on 42 U.S.C. § 1981a(b)(1), which provides that "[a] complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) . . . ." (Emphasis added). This statute "allows plaintiffs asserting a Title VII claim to recover compensatory and punitive damages, provided that recovery is unavailable under § 1981," but it "precludes plaintiffs from recovering punitive damages against governments, government agencies, and political subdivisions." *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 465–66 (5th Cir. 2001). Plaintiff's response merely reiterates that she has proof of discrimination. Resp. [29] at 8. To the extent Defendant is not already immune under the Eleventh Amendment, EMSH cannot be liable for punitive damages on Plaintiff's federal claims. *See Oden*, 246 F.3d at 465-66 (reversing punitive damage award).

B. State Law Claims

Defendant argues that Plaintiff's state law claims are barred for failure to comply with the notice provision of the Mississippi Tort Claims Act (MTCA), which requires that "ninety (90) days prior to maintaining an action . . . , [a person with a claim for injury arising under the MTCA] shall file a notice of claim with the chief executive officer of the governmental entity." Miss. Code Ann. § 11-46-11(1). EMSH is a state agency. *See* Miss. Code Ann. § 14-17-1 (establishing EMSH); Miss. Code Ann. § 11-46-1(j) (defining "State" in the MTCA to include, *inter alia*, "the State of Mississippi and any . . . hospital . . . thereof"). Plaintiff concedes she has not met the MTCA notice requirements. Resp. [29] at 7. Consequently, all state law claims are

dismissed. *See Univ. of Miss. Med. Ctr. v. Easterling*, 928 So. 2d 815 (Miss. 2006) (requiring dismissal of claim when plaintiff fails to comply with § 11-46-11(1) notice requirement).

**IV.     Conclusion**

For the reasons stated above, Defendant's motion for summary judgment is granted. Plaintiff's exhausted Title VII claims are dismissed with prejudice; her unexhausted Title VII claims are dismissed without prejudice; her remaining federal claims are dismissed without prejudice; and her state claims are dismissed with prejudice.[5]

**SO ORDERED** this the 23rd day of August, 2010.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[5]The Court was careful to consider issues as framed by the parties. However, given the way the Amended Complaint was drafted and the less than specific nature of the Plaintiff's responses to Defendant's dispositive legal arguments, Plaintiff may file a notice outlining any claims she believes survive the instant ruling no later than September 6, 2010. Until such time, the Court will withhold entering judgment.